[Crim. No. 8079.   Second Dist., Div. Three.   Dec. 27, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD MONTE DAVIS, Defendant and Appellant.

Stanley Weinstein, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Richard S. Cohen, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—By an information the defendant was charged with having had possession of heroin on or about May 8, 1961, in violation of section 11500 of the Health and Safety Code. It was further alleged that he had suffered two prior convictions for the violation of that section of the Health and Safety Code. In a nonjury trial, he was found guilty as charged and the allegations as to the prior convictions were found to be true. He has appealed from the judgment and from the order denying his motion for a new trial.

The defendant asserts that the evidence against him was obtained by means of an unlawful search and seizure. The pertinent evidence will be stated. B. T. Austin, a deputy sheriff, testified that at about 5 p. m. on May 8, 1961, in the course of a narcotic investigation, he went to an apartment house in Downey. A Mr. William Brooks had informed him that the defendant was there engaged in selling heroin. About one and a half months before, the witness had arrested a John Sweeten who had heroin in his possession and Mr. Sweeten had stated that the defendant had taken him to Tijuana where they had purchased heroin which they brought back to the area. Furthermore, the witness knew that the defendant was "a convicted narcotic addict." The witness also testified as follows: ". . . we received in our Detail copies of the names of registered addicts crossing the border going into Mexico, and Mr. Davis' name had appeared quite frequently for approximately two months prior to his arrest."

Officer Austin requested from the manager of the apartment house a key to the defendant's apartment because he did not want to damage the property "if a forced entry was

necessary." Other officers entered another apartment and placed a Jill Cryer under arrest "for addiction." Officer Austin knocked on the door of the defendant's apartment and, there being no response, he then entered the apartment by use of the key received from the manager. The defendant was asleep on the couch. When the officer aroused him he observed that the defendant was "very disorientated" and his eyes were "very pin-pointed." Upon being asked if he was using heroin, the defendant said that he was only "chipping around." Officer Austin then placed him under arrest "for violation of State Narcotic Laws." The premises were searched but no narcotics were found. The officers left the apartment between 6:30 and 7 p. m.

The defendant and Jill Cryer were taken to the Norwalk Sheriff's Station. There the officers received information from Miss Cryer that the defendant had heroin which was hidden in the garage area of the apartment premises. The officers returned to the premises about 9 p. m. and searched the garage area, an open area that could be entered from an alley. They observed a number of cabinets, two of which were secured by locks and were located about 125 to 150 feet away from the defendant's apartment. In the presence of the defendant the manager of the apartment said that he had questioned each of the tenants and could find no one who was using the locked cabinets. The defendant stated that neither cabinet contained property belonging to him. The officers then used force to open the cabinets.[1] In one was a cardboard box containing 13 white paper bindles which, as shown by an analysis thereafter made, contained heroin. The defendant was asked if this was all the heroin he had and he answered that it was. Inquiry was then made as to what had happened to the rubber containers of heroin which, the questioner asserted, the defendant had had earlier in the day, and he replied that he had sold the heroin to a person in Gardena.

There was no evidence that the officers reasonably believed in good faith that the manager had authority to consent to their entry into the defendant's apartment. Moreover, no attempt was made by the prosecution to establish such a belief. (Cf. *People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721].)

---

[1]Officer Austin testified as to the method of entry of the cabinets as follows: "A board was broken loose from one side of it and [we] went in through one locker, the locker that was unlocked, and took one of the boards off the side of the locker that was locked and removed the cardboard box in that manner."

Rather, the only inference that could be drawn from the evidence was that the officers acted on the assumption that they had a right to enter the apartment to arrest the defendant and procured the key from the manager only for the purpose of avoiding damage to the property in the course of their action.

If the officers had reasonable cause for the arrest of the defendant and if, having knocked on the door and having received no response, they had reasonable grounds for believing the defendant to be inside the apartment, then their entry was justified. (*People* v. *Carswell*, 51 Cal.2d 602, 607 [335 P.2d 99].) But it is not necessary to decide whether such reasonable cause existed in the present case if the record discloses that, independently of the matter of the propriety of the officers' conduct with respect to their earlier entry into the defendant's apartment, there was a sufficient basis for a determination by the trial court that the heroin found several hours later in the garage area of the premises was not obtained as the result of an illegal search and seizure.

Whether or not in a particular case some authorized person consented to a search of premises by officers acting without a search warrant presents a question of fact. In the present case it was a reasonable inference that the manager of the apartment premises had at least joint control with the tenants of the garage area. In view of the cooperation given to the officers by the manager, the officers were justified in assuming not only that the manager had authority to consent to the particular search which occurred on the second visit of the officers but that the manager did in fact consent thereto. (See *People* v. *Corrao*, 201 Cal.App.2d 848, 851-852 [20 Cal. Rptr. 492] ; *People* v. *Rodriguez*, 180 Cal.App.2d 534, 536 [4 Cal.Rptr. 456] ; *People* v. *Hicks*, 165 Cal.App.2d 548, 551 [331 P.2d 1003].) Under such circumstances, the search was legal and the seizure of the heroin was justified.

The appeal from the order denying the defendant's motion for a new trial is dismissed.[2] The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

---

[2]See section 1237 of the Penal Code, as amended in 1961.