[Crim. No. 5933.   First Dist., Div. Three.   Mar. 3, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. BARBARA D. STEPHENS et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Don Jacobson, Deputy Attorneys General, for Plaintiff and Appellant.

William J. Gintjee for Defendants and Respondents.

SALSMAN, J.—An information was filed in the superior court charging respondents Ernest L. and Barbara D. Stephens with violations of Penal Code section 496 (receiving stolen property), Health and Safety Code section 11530 (possession of narcotics—marijuana), and Penal Code section 12021 (possession of a concealable weapon by a felon), the last charge being against Ernest only. Respondents moved to dismiss the information pursuant to Penal Code section 995. Their motion was granted and the People appeal.

The reporter's transcript of the evidence given at the preliminary hearing reveals that respondent Ernest is a parolee, and at the time of his arrest was in violation of the terms and conditions of his parole. At about 10:30 p.m. on June 15, 1966, several officers went to Ernest's apartment to arrest him. Prior to this time, however, the police had been observing the premises where Ernest resided because they suspected prostitution activities there. When the arresting officers arrived at the apartment house they obtained a passkey to Ernest's apartment from the building manager. One officer was stationed at the rear entrance to the apartment while other officers went to the front door.

When the officers arrived at the front door they could hear the sound of voices in conversation and soft music coming from within. They knocked twice, but received no response. The sound of voices and music continued without interruption. The officers then used the passkey and entered the apartment. They found four persons present—respondents and another couple. All four were seated. The officers arrested Ernest and then searched the apartment. They found marijuana and three concealable weapons. The two women present were wearing items of stolen clothing. Although all four persons in the apartment were arrested, the magistrate discharged the other couple and held only Ernest and Barbara to answer in the superior court.

In seeking reversal of the order of dismissal the Attorney General contends that respondents were properly arrested within the guidelines described in *People* v. *Arellano,* 239 Cal.App.2d 389 [48 Cal.Rptr. 686]. He also cites and relies upon *People* v. *Carswell,* 51 Cal.2d 602, 607 [335 P.2d 99] and *People* v. *Valles,* 197 Cal.App.2d 362 [17 Cal.Rptr. 204]. Respondents on the other hand contend that the entry of the officers into their apartment was contrary to law; that the evidence seized after search was illegally obtained, and hence that dismissal of the charges against them was proper. We

agree with respondents, and therefore affirm the order of dismissal.

Penal Code section 844 requires that: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired." The critical question here is whether on our facts compliance with section 844 is shown, or if not, whether compliance is excused by the facts.

The earliest recorded expressions of the common law from which section 844 derives show that the authority of officers to break open the doors of a house and to enter to arrest a person within was strictly limited. It was recognized that summary entry into a man's house invaded his right of privacy and destroyed the seclusion and tranquility of his home. The householder's right thus to be secure in his home was summed up in the ancient maxim that a man's house is his castle. The right is mentioned in the early Yearbooks (13th Yearbook of Edward IV (1461-1483), folio 9) and is noted also by many early writers. (2 Hawkins, Pleas of the Crown (1762), ch. 14, § 7; Foster, Crown Law (1762), 320-321; Coke, 4th Inst. 177; see also 1 Hale, Pleas of the Crown (1736), 583.) In the political field, the declamation of William Pitt in the House of Commons (1763), describing and defending the right, is familiar: "The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!"

Although a man's home from earliest times has been his castle, wherein he has the right to be secure against the unwarranted invasions of officers of the law, it was not and never has been an inviolable refuge to which the wrongdoer could retreat with absolute immunity from arrest. There have always been well recognized circumstances to which the castle right yielded. These circumstances were described long ago in *Semayne's Case* (1603) 5 Co. Rep. 91a, where it was said: "In all cases where the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. *But before he breaks it, he ought to*

*signify the cause of his coming, and to make request to open doors. . . ."* (Italics supplied.) Generally speaking, the rule of that case is the law today. (*Miller* v. *United States,* 357 U.S. 301, 308 [2 L.Ed.2d 1332, 78 S.Ct. 1190]; see also, dissenting opinion of Brennan, J., in *Ker* v. *California,* 374 U.S. 23, 47 [10 L.Ed.2d 726, 83 S.Ct. 1623].) Its substance is expressed in both federal and state statutes, including our own. (Pen. Code, § 844; see also 18 U.S.C.A. Crimes and Criminal Procedure, § 3109, and citations noted in *Miller, supra,* p. 308, fn. 8.)

That cases may arise and circumstances be presented to an arresting officer which excuse strict compliance with section 844 is well recognized. Thus it has been held that compliance is excused and entry justified where the arresting officers in good faith believe that evidence is about to be destroyed (*People* v. *Carrillo,* 64 Cal.2d 387, 390, 391 [50 Cal.Rptr. 185, 412 P.2d 377]), or where the officer's peril in making the arrest is increased, or the purpose of the arrest may be frustrated (*People* v. *Maddox,* 46 Cal.2d 301, 305-307 [294 P.2d 6]), or where the officers reasonably believe the person to be arrested is within and is intentionally not responding to their knocking (*People* v. *Carswell, supra*), or where the purpose of entry is to aid one within reasonably believed to be in distress (*People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721]).

When the facts of our case are measured against the law it is clear that there has been no sufficient compliance with section 844. All that appears here is that the officers knocked twice and, receiving no response, entered by the use of a passkey. There is no evidence that they identified themselves as officers before entry, or that they demanded admittance or announced the purpose of their visit.

*People* v. *Carswell, supra,* 51 Cal.2d 602, 607, upon which the Attorney General relies, does not support his contention that entry here was proper within the rule of that case. In *Carswell,* it is clear that entry was made only after the officers had knocked *and announced that they were police officers.* Thus in that case there was substantial compliance with section 844, which, taken together with testimony that persons seeking to avoid arrest commonly fail to respond to a knock at the door, warranted the conclusion that entry was justified. Nor does *People* v. *Arellano, supra,* 239 Cal.App.2d 389 offer much comfort to the People, because there the arresting officers neither announced their presence nor demanded admittance, but simply entered by means of a passkey. The court

properly held that entry was not justified and evidence obtained thereby should have been excluded from the case.

We have not overlooked the fact that *Arellano* is cited to us only for its reference to *Carswell* as authority for the exception that officers may lawfully enter when they reasonably believe the person to be arrested is within and not responding to their knocking. But, as we have pointed out, in *Carswell* the officers not only knocked but also announced they were police officers, and entered only after being met by silence and a total failure to respond.

*People* v. *Valles, supra,* 197 Cal.App.2d 362 is another case in which the court found, on the facts presented to it, that compliance with section 844 was excused. There the officers first ascertained from the landlady that the persons intended to be arrested were in their apartment. As in *Carswell,* the officers knocked, received no reply, and thereafter entered. Implicit in the court's decision is the conclusion that compliance with the rule of the code section was excused because the persons known to be within were concealing themselves to avoid arrest and hence their failure to respond to the knock at the door warranted summary entry. But here the trial judge has reached the opposite conclusion. Although the officers may have known that respondent Ernest was within the apartment, there was no evidence to suggest that he was intentionally refusing to respond to the knock at his door. On the contrary, the fact that the voices in conversation and the sound of soft music continued after the knock as before warrants the inference that the officer's knock was unheard. This fact distinguishes our case from *People* v. *Davis,* 211 Cal.App. 2d 455 [27 Cal.Rptr. 436], also cited by the Attorney General.

Because they did not announce their presence, or the fact that they were police officers demanding admittance, and because the evidence does not warrant the inference that respondents were concealing themselves to avoid arrest, the trial judge's conclusion that compliance with section 844 was neither shown nor excused is fully justified. We conclude therefore that, on our facts, entry by the officers was illegal and that the subsequent search and arrest were invalid.

The order dismissing the information is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied March 31, 1967, and appellant's petition for a hearing by the Supreme Court was denied April 26, 1967.