[Crim. No. 16489. Second Dist., Div. Five. Mar. 25, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROSANA WHITE NORTON et al., Defendants and Appellants.

## COUNSEL

McGurrin & Denny and Thomas M. McGurrin for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas E. Warriner, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—By information, defendants White and Norton were charged with possession for sale of a narcotic, in violation of Health and Safety Code section 11530.5. Defendants moved to dismiss the complaint on the grounds that the municipal court in case #A-223313 had already adjudicated the issue that the evidence obtained in the instant case was the result of an unlawful search and seizure and therefore the matter was res judicata. At time of arraignment in the superior court defendants made a motion under Penal Code section 995 which was heard and denied. Each defendant pleaded not guilty. Defendants made a motion under Penal Code section 1538.5, submitting the cause on the basis of the transcripts of the preliminary hearing, and the motion was heard and denied. Defendants personally and all counsel waived trial by jury. By stipulation of defendants personally and all counsel, the cause was submitted at trial upon the basis of the testimony contained in the transcripts of the preliminary hearing. Defendants were found guilty of violation of Health and Safety Code section 11530, a lesser but necessarily included offense. Defendants' motion for a new trial was denied. After a hearing conducted pursuant to Penal Code section 1204, and after having read and considered the probation officer's report, the court suspended proceedings and granted probation for three years upon various terms and conditions, among which was that defendants spend the first 60 days in county jail and pay a fine of $250. Defendants filed a timely notice of appeal, and their motion for a stay of execution pending appeal was granted, pursuant to Penal Code section 1243.

Fred J. McKnight was a police officer for the City of Los Angeles, attached to the narcotic division. Officer McKnight had a telephone conversation with an unidentified female who informed him that defendant White was residing at 169 South Loma Drive with her small child and defendant Norton; that marijuana was being used on the premises in the

presence of the child; and that defendant White was "dealing marijuana, giving it out."

At approximately 4:35 p.m. on July 7, 1967, approximately four or five days after the anonymous phone call, Officer McKnight and another officer, attired in civilian clothes, with neither an arrest nor a search warrant, drove to the Loma Drive address in an unmarked police vehicle, and approached the front door. The officers found that "the front door was completely open," as far back against the wall as it could go. Officer McKnight stood at the door for as long as 45 seconds, possibly a minute, "listening [and] observing." He heard a radio or record player, which he concluded was in the rear of the residence. He also heard sounds of movement of one or more persons, coming from the rear of the residence. From where Officer McKnight was standing in the doorway, the "major portion of the dining room table and a goodly portion of the interior of the dining room" were visible. The approximate distance between the dining room table and the officer was 11 steps, and nothing in between obstructed the officer's vision. The lighting in the dining room area was "good," the light coming from the front door, an entryway from the kitchen, and windows in both the living and dining rooms.

Officer McKnight observed a small spice jar on the dining room table which contained approximately one-half inch of "finely grated green plant material." The officer also observed "a large yellow tin container" of what appeared to be marijuana, and a package of Zig Zag cigarette papers lying on the table.

Officer McKnight then knocked on the "exterior wood portion on the outside of the entryway," which was "part of the exterior of the building." Approximately 45 seconds to a minute elapsed without anyone answering, and the officer concluded that the person within could not hear him. He and his partner entered the residence without saying anything and without physically touching the door, and examined the objects on the dining room table, confirming the earlier conclusion that the plant material was in fact marijuana. The officer chose not to leave to obtain a warrant at this time for the reason that he did not know whether anyone had observed his approach to the building, and he feared that the contraband might be destroyed were he to leave.

The two officers walked to the rear portion of the residence, from where they had heard the sounds earlier, and found defendant Simon[1] there. The officers identified themselves and explained that they were conducting a narcotics investigation. Defendant Simon explained that he did not live

---

[1]Defendant Simon is not an appellant here.

in the residence, but rather was merely visiting defendant White. He stated further that he was her business partner in a dress shop, and that he was presently working on some dresses in the residence. Officer McKnight next examined the bowl of a "large hookah pipe" in the room, and found it to contain marijuana. Defendant Simon was thereupon placed under arrest. The officers asked defendant Simon where defendant White was, and he answered that she had left but would be returning in 10 or 15 minutes.

Defendants White and Norton returned to the residence approximately 10 minutes later, and were arrested. After they were placed in a radio unit and transported to police headquarters, the officers conducted a further search, locating other items of plant material resembling marijuana "throughout the residence." The search revealed a quantity of marijuana sufficient to make 600 cigarettes.

■ Defendants White and Norton contend that there was no probable cause for the arrest of defendants or any other person at the premises involved.[2] In *Fraher* v. *Superior Court,* 272 Cal.App.2d 155, 159-160 [77 Cal.Rptr. 366], the court stated: "Reasonable cause for an arrest may be based on hearsay information and is not limited to evidence which would be admissible at a trial on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535].) However, if the information is obtained from an anonymous informer it cannot be considered as reasonable cause for an arrest unless other evidence is presented to the court to justify the conclusion that reliance on the information was reasonable. Reliance on anonymous information may be justified by evidence obtained through the personal observations of the police. (*Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36].) Such independent evidence need not itself constitute reasonable cause to make an arrest. (*People* v. *Prewitt,* 52 Cal.2d 330 [341 P.2d 1].)

"In this case, acting on the anonymous information, . . . [the] officers went to the petitioners' residence to seek an interview concerning the reported narcotics violations. It is not unreasonable police conduct to seek an interview with the person accused of criminal activity. [Citations.] [The officers] observed the water pipe by looking through the front window of the petitioners' residence. '[The manner of this observation] does not constitute an unreasonable search. . . .' (*People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855]; *Bielicki* v. *Superior Court,* 57 Cal.2d 602, 607 [21 Cal.Rptr. 552, 371 P.2d 288]; *People* v. *Garcia,* 248 Cal.App.2d ·284,

---

[2]This opinion will not determine matters relative to the nonappealing defendant (Simon).

287 [56 Cal.Rptr. 217]; *People* v. *Willard,* 238 Cal.App.2d 292, 297 [47 Cal.Rptr. 734].)"

While the police officers had probable cause to enter the residence to make an arrest, did they do so in violation of Penal Code section 844, which states: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired "?

The cases of *Ker* v. *California,* 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623], *People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], and *Duke* v. *Superior Court,* 1 Cal.3d 314 [82 Cal.Rptr. 348, 461 P.2d 628], to name but a leading few, have articulated the purpose of section 844. It was not until *People* v. *Bradley,* 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129], however, that the California Supreme Court directly ruled upon the question of whether an open door constituted a waiver of physical privacy, or, to put it another way, a consent to unannounced entry into an abode when the purpose of entry was to consummate an arrest. In the majority opinion, the court there specifically refrained from exceeding the required holding in accordance with the facts before it. At page 87 of *Bradley,* the court stated: "Although section 844 codified the common law rule requiring peace officers to demand admittance and explain their purpose before they break open a door or window, the section is silent or inexplicit as to whether the officers must make such a demand and explanation before they enter a house through an open door. Even if at common law an unannounced intrusion through an open door was lawful, we are satisfied in view of the purposes of section 844, as stated in *People* v. *Rosales, supra,* 68 Cal.2d 299, 304, that the demand and explanation requirements of that section also apply where, as here, officers walked into a dwelling through an open door at nighttime when the occupant apparently is asleep. [Fn. 1.] Under the circumstances here appearing there was a breaking within the meaning of the section." In a footnote to the above quotation (fn. 1, p. 88), the court stated: "We intimate no view whether in the absence of an excuse for compliance under the exceptions to section 844 the demand and explanation requirements of that section apply to all entries through an open door (including e.g. entrance through an open door by a uniformed officer during the day where immediately after crossing the threshold he announces himself and his purpose). In order to avoid any possible illegality, however, it would be advisable for officers before entering a house through an open door to make an arrest to always demand admittance and explain the purpose for which they desire admittance unless the

case comes within an established exception to section 844." In addition, the majority in *Bradley* expressed its disapproval of *People* v. *Hamilton,* 257 Cal.App.2d 296 [64 Cal.Rptr. 578] insofar as that case is inconsistent with its expressed views.[3] At the same time, it declared unnecessary a decision as to "whether the broad statement[4] in *Beamon* [*People* v. *Beamon,* 268 Cal.App.2d 61] is correct." (The "concurring and dissenting" opinion there quotes *Beamon* at length, and fully approves its rationale.)

■ As the facts of the instant case disclose, we are confronted with the exact question which the majority in *Bradley* specifically declined to answer.[5] The purposes for Penal Code section 844 are set forth in both opinions in *Bradley*.[6] To involve section 844, first, the entry by the officer must be for the purpose of accomplishing an arrest. This element is established in the instant case. The officers sought an interview with the defendants about alleged narcotic activities, and went to defendants' residence

[3]"If a door is found open by the officer (*United States* v. *Williams,* 351 F.2d 475) or opened to him, although not by the defendant who is intended to be placed under arrest, the officer may enter without warning (*People* v. *Chacon,* 223 Cal.App.2d 739 [35 Cal.Rptr. 799]; *People* v. *Baranko,* 201 Cal.App.2d 189 [20 Cal.Rptr. 139]; *Hopper* v. *United States,* 267 F.2d 904 . . . ."

[4]"In *People* v. *Beamon* (1968) 268 Cal.App.2d 61, 64-65 [73 Cal.Rptr. 604], the Court of Appeal stated: 'In our opinion an open door does not excuse noncompliance with section 844 unless noncompliance is otherwise excused under the rules declared in *Rosales.* Accordingly, a police officer may not enter through an open door of a house without first demanding admittance and explaining the purpose for which admittance is desired unless he reasonably and in good faith believes that such compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence. We are persuaded to this conclusion by the purpose of section 844 as declared in *Rosales* and by the clear language of the section which does not restrict the required announcement to any particular type of entry by the police officers. . . . Moreover, if analogy to the law of burglary is required, we note that in California no breaking or forceable entry is required in proof of the commission of a burglary . . . and, accordingly, that a burglary can be committed by entering through an open door or window.' "

[5]*People* v. *Taylor,* 266 Cal.App.2d 14 [71 Cal.Rptr. 886] did not seek to determine this issue. At page 18, we said: "On the facts of this case, however, we do not believe that either the spirit or the letter of section 844 was violated. Officers Winlock and Arnold did not enter the defendant's apartment at the moment the door swung open. They did not rush into the room. After the door opened following Officer Winlock's rap, the officers saw Mr. Mayfield standing in the middle of the room in front of them. Officer Winlock greeted Mayfield and asked him if the defendant were there. After Mr. Mayfield said that [defendant] was not there, the two officers entered the room and told Mr. Mayfield that they would wait for the defendant. [¶] The trial court in ruling upon the motion to suppress commented that there was no forced entry in this case and that Mayfield 'impliedly if not actually invited them in.' The record amply supported the trial judge's statements."

[6]Justice Tobriner's concurring and dissenting opinion (p. 90) states: "Section 844 serves to protect the privacy of occupants (see *Miller* v. *United States* (1958) 357 U.S. 301, 313-314 [2 L.Ed.2d 1332, 1340-1341, 78 S.Ct. 1190]) and the safety of occupants, policemen, and bystanders (see *People* v. *Rosales* (1968) 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489].)"

to conduct it. They heard what was believed to be sounds of human activity in the rear of the house, and certainly it cannot be said that the officers did not intend to arrest, on the theory of constructive possession, whoever was in control of the premises wherein narcotics were observed.

The second element (excluding the issue of breaking) is sought to be factually established here by virtue of the officer having knocked on the frame of the door. It must be concluded that either the knock had been unheard (as the officer concluded), or that it was being ignored. A knock at the door or a ringing of a doorbell is nothing more than a means of requesting recognition of presence. Whether it amounts to a request for verbal intercourse or not is dependent upon many variables, and a discussion of that facet is not here demanded. But section 844 does not say the officer must knock, or ring the doorbell; it requires that a demand for admittance be articulated and the purpose explained. In *Greven* v. *Superior Court,* 71 Cal.2d 287, 293 [78 Cal.Rptr. 504, 455 P.2d 432], it states: "[The elements of section 844 require] an effort by the officers prior to entry to *communicate*[7] to persons inside [Fn.] that they seek to be admitted in order to discharge their duties *as law enforcement officers.*" No explanation is given as to why neither officer went to the back door to communicate to the person or persons apparently present in the rear portion of the premises, but who failed to respond to their knock at the front door.

■ We hold that the rule of announcement set forth in section 844 of the Penal Code is not complied with unless the officers, prior to entry, "give notice of their authority." ■ It is not here contended that this requirement was complied with, or for some reason excused, except by the conclusion of the officers that their knock had not been heard. This reason was declared an unavailing one in *People* v. *Stephens,* 249 Cal.App.2d 113 [57 Cal.Rptr. 66], where the court said (p. 116): "When the facts of our case are measured against the law it is clear that there has been no sufficient compliance with section 844. All that appears here is that the officers knocked twice and, receiving no response, entered by use of a passkey. There is no evidence that they identified themselves as officers before entry, or that they demanded admittance or announced the purpose of their visit."[8]

---

[7]Italics added.

[8]Citing *People* v. *Carswell,* 51 Cal.2d 602 [335 P.2d 99], the court said: "As in *Carswell,* the officers knocked, received no reply, and thereafter entered. Implicit in the court's decision is the conclusion that compliance with the rule of the code section was excused because the persons known to be within were concealing themselves to avoid arrest and hence their failure to respond to the knock at the door warranted

██ There remains then the question, does the entry, during the daytime, through an open door, require compliance with section 844? Our answer is that certainly, where the facts which might excuse literal compliance are not present,[9] the purposes of section 844 are only served by compliance with its dictates. ██ Under the facts of the instant case, the purposes of compliance with the elements of section 844 were not served, and compliance was just as necessary relative to the unseen occupant of the house as though the entry were made in the dark of the night. ██ The fact that the illegal entry occurred some time prior to the return to the residence by defendants, at which time they were then arrested, does not attenuate the illegality of the seizure.

The judgment is reversed.

Kaus, P. J., and Aiso, J., concurred.

---

summary entry. But here the trial judge has reached the opposite conclusion. Although the officers may have known that respondent Ernest was within the apartment, there was no evidence to suggest that he was intentionally refusing to respond to the knock at his door. On the contrary, the fact that the voices in conversation and the sound of soft music continued after the knock as before warrants the inference that the officer's knock was unheard. This fact distinguishes our case from *People* v. *Davis,* 211 Cal. App.2d 455 [27 Cal.Rptr. 436], also cited by the Attorney General.

"Because they did not announce their presence, or the fact that they were police officers demanding admittance, and because the evidence does not warrant the inference that respondents were concealing themselves to avoid arrest, the trial judge's conclusion that compliance with section 844 was neither shown nor excused is fully justified. We conclude therefore that, on our facts, entry by the officers was illegal and that the subsequent search and arrest were invalid."

[9]*People* v. *Beamon, supra,* 268 Cal.App.2d 61, may well be read in this light, and it does not necessarily seek to determine the instant issue. It may well be that in the proper circumstances, where the officers are in uniform, in plain and obvious view, and known to be in observation of the commission of a crime then taking place, and they then proceed toward an open door on the far side of which are the perpetrators, then even substantial compliance might be unnecessary because the purpose of the section has been accomplished. (See *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665]; Cf. *People* v. *Olivas,* 266 Cal.App.2d 380 [72 Cal.Rptr. 109].)