[No. B149435. Second Dist., Div. Six. July 19, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
CREIGHTON O'DELL SCHOFIELD, Defendant and Appellant.

**COUNSEL**

Robert B. Lilley for Defendant and Appellant.

Gerald T. Shea, District Attorney, and Curtis A. Rankin, Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**YEGAN, Acting P. J.**—Originally enacted in 1872, Penal Code section 836 codified the common law rule which generally precluded a peace officer from making a warrantless arrest for a misdemeanor not committed in the officer's presence. At that time, of course, there were no automobiles and no "drunk drivers." Then, an inebriated person either riding a horse or driving a wagon posed little danger to the public. Times have changed. Now, an inebriated person driving a motor vehicle poses a great danger to the public. Despite increasingly severe penalties for driving under the influence, arrest and conviction for such offense continue to escalate. But prosecution has sometimes been hampered by the "presence" requirement of Penal Code section 836. The Legislature has provided exceptions to this requirement. At

issue here is the destruction of evidence exception. (Veh. Code, § 40300.5, subd. (e). See *post*, at p. 972.)

We hold that a peace officer with probable cause may arrest a person for misdemeanor driving under the influence of alcohol and or drugs not committed in the officer's presence where, as here, evidence may be destroyed unless the person is immediately arrested. We quickly qualify our holding by precluding a peace officer from forcibly entering a residence to effect such an arrest.

Creighton O'Dell Schofield was charged with violating Vehicle Code section 23152, subdivisions (a) and (b). Prior to trial, he unsuccessfully sought to suppress the fruits of what he claimed was an unlawful arrest. He was also unsuccessful before the Appellate Division of the Superior Court of San Luis Obispo County. That court, however, certified the matter to us. We ordered transfer to settle an important question of law. (Cal. Rules of Court, rule 63.)

*Facts*

At approximately 2:30 p.m. February 8, 2000, Atascadero Fire Department personnel were dispatched to Chalk Mountain Liquor Store. They had received a report of a passed-out subject. Atascadero Peace Officer Michael McCray also responded and was the first to arrive. Office McCray contacted a store employee, Stephen Bolin.

Bolin stated that a subject, later identified as appellant, had passed out near the side entrance to the liquor store. Bolin said he thought appellant had a medical problem, prompting him to call 911. At that point, another customer helped appellant stand up. Bolin said he went outside and saw appellant getting into a green Karman Ghia. Bolin walked up to the vehicle and noticed that appellant was sitting in the driver's seat of the vehicle. Bolin asked appellant if he was all right, and appellant responded, "Yes." At that time Bolin detected a strong odor of alcohol on appellant's breath. Bolin said he believed that the subject was too intoxicated to drive so he attempted to take the keys from the ignition. Appellant grabbed the keys, pulled them from the ignition, and threw them on the floorboard. Bolin said he believed the person was not going to drive and so went back to the liquor store. Bolin then saw appellant drive away southbound on El Camino Real.

Bolin described the driver as being an older White male, in his 50's, with brown hair and wearing sunglasses. He said the subject was a "regular" at the liquor store. Bolin handed McCray a piece of paper which showed the

license plate number to be 1EMS119. McCray had police dispatch run the license plate while he drove southbound on El Camino Real to find appellant. McCray was unable to locate the vehicle. He was advised that the Karman Ghia was registered to a subject who lived at 9371 Musselman Avenue in the City of Atascadero. McCray drove there and saw the Karman Ghia parked in front of the residence. McCray exited his patrol car and touched the rear trunk deck, which covers the engine, and noticed that it was still warm.

McCray knocked on the front door. Appellant opened the door and Officer McCray explained his reason for being there. McCray asked appellant what his name was and appellant identified himself as Creighton Schofield. McCray asked appellant if he had just been at Chalk Mountain Liquor Store and appellant replied, "Yes." McCray asked appellant to explain what had happened. Appellant did so while at the open front door of his home.

Appellant said he had gone to the liquor store to buy cigarettes. While at the store, he passed out for a brief moment. Someone helped him to his car and he drove home. McCray asked him why he had passed out and appellant said that he didn't know. McCray asked him if he needed any medical assistance, and appellant said, "No." McCray noticed a strong odor of an alcoholic beverage about appellant. He also noticed that appellant's eyes were bloodshot and watery and his balance was impaired. He asked appellant if he had consumed any alcoholic beverages and appellant responded, "Yes." Appellant said that he had been at Outlaw's Bar and had three vodka and cranberry juice drinks. Appellant said that he had been at home for a couple of minutes prior to McCray's arrival and hadn't had time to have anything to drink at home. McCray asked if appellant had a driver's license. Appellant said, "Yes." Appellant pulled his wallet out of his back pocket and handed McCray a Visa Card. McCray explained to appellant that he had handed him a Visa Card. Appellant then reached back in the wallet and retrieved his driver's license.

McCray explained to appellant that a witness had seen appellant drive away from the store and believed that he was possibly intoxicated. McCray also explained to appellant that, based on McCray's observations, it appeared that appellant was possibly intoxicated. McCray asked if appellant would be willing to perform field sobriety tests (FST's). Appellant started to walk out his front door but lost his balance and fell into the door. He then opened the door and walked outside after McCray asked him if he was all right. McCray noticed that appellant walked with a distinct stagger. After performing the FST's poorly, Officer McCray arrested appellant. He elected to provide a blood sample, which was drawn at a hospital at approximately 3:30 p.m.

## Judicial Restraint

The parties debate whether, after the passage of Proposition 8, the exclusionary rule applies to fruits of a theoretical unlawful arrest in violation of Penal Code section 836. ■ Consistent with time-honored rules of judicial restraint, " '[w]e do not reach constitutional questions unless absolutely required to do so to dispose of a matter before us.' [Citations.]" (*People v. Leonard* (1983) 34 Cal.3d 183, 187 [193 Cal.Rptr. 171, 666 P.2d 28]; cf. *Atwater v. City of Lago Vista* (2001) 532 U.S. 318, 340, fn. 11 [121 S.Ct. 1536, 1550, 149 L.Ed.2d 549, 568] ["We need not, and thus do not, speculate whether the Fourth Amendment entails an 'in the presence' requirment for purposes of misdemeanor arrests. [Citation.]"].) Here it is unnecessary to agree or disagree with *People v. Donaldson* (1995) 36 Cal.App.4th 532 [42 Cal.Rptr.2d 314] and *People v. Trapane* (1991) 1 Cal.App.4th Supp. 10 [3 Cal.Rptr.2d 423] which suggest and hold, respectively, that the exclusionary rule for the fruits of an unlawful arrest does not apply where a misdemeanor arrest is unlawful because it was not committed in the officer's presence. (See *In re Lance W.* (1985) 37 Cal.3d. 873 [210 Cal.Rptr. 631, 694 P.2d 744].) "Wise adjudication has its own time for ripening." (*State of Maryland v. Baltimore Radio Show* (1950) 338 U.S. 912, 918 [70 S.Ct. 252, 255, 94 L.Ed. 562, 566] (opn. of Frankfurter, J.).)

## Statutory Destruction of Evidence Exception

■ We decide this case on a statutory basis. There was no unlawful arrest here because of the destruction of evidence exception to Penal Code section 836. Originally enacted in 1872, Penal Code section 836 generally precludes warrantless arrests for misdemeanors and infractions not committed in the officer's presence: "A peace officer may arrest a person . . . whenever . . . [¶] [t]he officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence." (Pen. Code, § 836 subd. (a)(1).) Generally speaking, this codified the common law rule of warrantless misdemeanor arrests. (*Carroll v. United States* (1925) 267 U.S. 132, 157 [45 S.Ct. 280, 286, 69 L.Ed. 543, 39 A.L.R. 790], quoting 9 Halsbury, Law of England (1909) § 612, p. 299; cf. *Atwater v. City of Lago Vista, supra,* 532 U.S. 318 [121 S.Ct. 1536, 1544, 149 L.Ed.2d 549, 561].)

In 1969, the Legislature enacted Vehicle Code section 40300.5, which has since been amended five times. These amendments have resulted in a continuous expansion of the exceptions to the presence requirement of Penal Code section 836. As recently recognized by the United States Supreme Court, " 'the common law authority to arrest without a warrant in misdemeanor cases may be enlarged by statute . . . .' " (*Atwater v City of Lago Vista, supra,* 532 U.S. at p. 343 [121 S.Ct. at p. 1552, 149 L.Ed.2d at p. 570].)

In pertinent part Vehicle Code section 40300.5 now provides: "In addition to the authority to make an arrest without a warrant pursuant to paragraph (1) of subdivision (a) of Section 836 of the Penal Code, a peace officer may, without a warrant, arrest a person when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug when . . . the following exists. [¶] . . . [¶] (e) The person may destroy or conceal evidence of the crime unless immediately arrested."

Legislative intent is expressed in the words of the statute itself. The choice of words, "In addition to . . . Section 836 of the Penal Code," (Veh. Code, § 40300.5) unquestionably demonstrates an enlargement of power to arrest by a peace officer in driving under the influence cases. The statute cannot reasonably be read in any other fashion. There are other indicators of legislative intent.

When the 1984 amendment to Vehicle Code section 40300.5 was enacted, the Legislature said: "The Legislature finds and declares that driving while under the influence of alcohol or drugs continues to pose a substantial danger to public health and safety, injuring over 65,000 people per year and killing an additional 2,400. Given the severity of the conduct involved and the exception in Section 40300.5 of the Vehicle Code from the general requirements of Section 836 of the Penal Code should be expanded to cover other instances in which the officer has reasonable cause to believe that the person to be arrested had been driving while under the influence of alcohol, drugs, or both." (Stats. 1984, ch. 722, § 2, pp. 2647-2648.) This expression of legislative intent pertained to the situation where the officer sees a vehicle involved in a traffic accident obstructing a roadway and the driver was nearby even though the officer did not see him or her drive in the officer's presence. This declaration provides guidance on how Vehicle Code section 40300.5 is to be construed in general. The Legislature has recognized that driving under the influence is widespread and serious with potential for catastrophic consequences. (*People v. Bellomo* (1984) 157 Cal.App.3d 193, 196 [203 Cal.Rptr. 610].) Due to metabolic destruction of alcohol and/or drugs in the bloodstream over time, this offense has unique proof problems requiring swift police action.

In 1986, Vehicle Code section 40300.6 was added directing the courts to "liberally" interpret Vehicle Code section 40300.5 "to further safe roads and the control of driving while under the influence of an alcoholic beverage or any drug in order to permit arrests to be made pursuant to that section within a reasonable time and distance away from the scene of a traffic accident."

(Veh. Code, § 40300.6.) To be sure, this language had express reference to traffic accidents and predated the destruction of evidence exception enacted in 1996. Just how did the Legislature come to enact this later exception?

In 1991, the California Supreme Court construed Penal Code section 836 subdivision (1) in the context of license revocation and said: "Because Penal Code section 836, subdivision 1, provides that a warrantless misdemeanor arrest is permissible only if a public offense occurs in the arresting officer's 'presence,' and because the officer in this case did not see Mercer's vehicle move, we conclude Mercer was not · 'lawfully arrested' for violation of section 23152(a) and thus cannot be subject to the license revocation." (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 769 [280 Cal.Rptr. 745, 809 P.2d 404].) The Supreme Court added: "The Legislature could, for example, exempt 'drunk driving' arrests from the 'presence' requirement of Penal Code section 836." (*Id.* at p. 769, fn. 24.) In 1991, Vehicle Code section 40300.5 subdivision (e) was not extant. It was added in 1996 in direct response to the Mercer opinion. It did not, however, go as far as the Supreme Court said it could go. Instead, it took a measured response by adding subdivision (d) ("The person may cause injury to himself or herself or damage property unless immediately arrested") and subdivision (e), the destruction of evidence ·exception.

### Destruction of Evidence by the Passage of Time

Appellant contends that Vehicle Code section 40300.5 subdivision (e) should be strictly construed as requiring the intentional or willful conceal-ment of evidence. In some instances, such ·will be the case. But did the Legislature intend that this section be limited to situations where the sus-pected driver flutters an open baggie of marijuana in the wind, tosses drugs out of the window from a speeding car, or pours out his or her remaining alcoholic beverage to avoid seizure by the police? Or did the Legislature also intend that it apply to the metabolic destruction of alcohol and/or drugs in the suspected driver's body? In this latter situation, is it not fair to say that the suspected driver is, by the passage of time, destroying or concealing evidence?

As noted by the appellate division, the State of Nebraska has an almost identical destruction of evidence statutory exception. Revised Statutes of Nebraska section 29-404.02 authorizes a peace officer to make a warrantless arrest upon reasonable cause that a misdemeanor has been committed and where "the officer has reasonable cause to believe that such person . . . [¶] . . . [¶] . . . may destroy or conceal evidence of the commission of such misdemeanor." The Nebraska Supreme Court rejected the statutory construc-tion requiring an intentional or willful state of mind. (*State v. Wegener*

(1992) 239 Neb. 946, 950 [479 N.W.2d 783, 787].) It held that the metabolic destruction of alcohol and/or drugs in the body by the simple passage of time, commonly referred to as "burn off" in criminal law parlance, "constitutes the destruction of evidence . . . ." (*Id.,* at p. 951 [479 N.W.2d at p. 487]; see also *Schmerber v. California* (1966) 384 U.S. 757, 770 [86 S.Ct. 1826, 1835, 16 L.Ed.2d 908, 919-920] [recognizing the threatened destruction of blood-alcohol evidence if an arresting officer were to delay obtaining a blood-alcohol sample by seeking a search warrant from a magistrate]; *State v. Ellinger* (1986) 223 Mont. 349, 352 [736 P.2d 1201, 1202-1203] [warrantless misdemeanor driving under the influence arrest not committed in the officer's presence was a circumstance requiring immediate arrest to preserve the defendant's evanescent blood alcohol].) We agree with the Nebraska Supreme Court. Vehicle Code section 40300.5 subdivision. (e) creates an exception to the presence requirement of Penal Code section 836 because evidence will be destroyed by the simple passage of time unless the person is immediately arrested.

## Residential Entry

Our holding does not authorize a peace officer to forcibly enter a residence to effect a driving under the influence arrest because otherwise evidence will be destroyed or concealed by the simple passage of time. (See *Welsh v. Wisconsin* (1984) 466 U.S.740 [104 S.Ct. 2091, 2099, 80 L.Ed. 2d 732, 753].)

"The householder's right thus to be secure in his home was summed up in the ancient maxim that a man's house is his castle. The right is mentioned in the early Yearbooks (13th Yearbook of Edward IV (1461-1483), folio 9) and is noted also by many early writers. (2 Hawkins, Pleas of the Crown (1762), ch. 14, § 7; Foster, Crown Law (1762), 320-321; Coke, 4th Inst. 177; see also 1 Hale, Pleas of the Crown (1736), 583.) In the political field, the declamation of William Pitt in the House of Commons (1763), describing and defending the right, is familiar: 'The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!' " (*People v. Stephens* (1967) 249 Cal.App.2d 113, 115 [57 Cal.Rptr. 66]; see also *People v. Camacho* (2000) 23 Cal.4th 824, 831 [98 Cal.Rptr.2d 232, 3 P.3d 878].)

However, "it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes." (*People v. Michael* (1955) 45 Cal.2d 751, 754.) In such a situation, the

officer may courteously inquire as long as such is not accompanied by any assertion of the right to enter or secure answers. (*Id.*, at p. 751.) "The Fourth Amendment's prohibition on warrantless entry into an individual's home does not apply to arrests made at the doorway, because the doorway is considered a public place." (*Lalonde v. County of Riverside* (9th Cir. 2000) 204 F.3d 947, 955.) Here, Officer McCray conducted an investigation at appellant's doorway. He did so courteously and did not assert the right to enter or secure answers to his questions.

## Conclusion

Appellant's arrest was statutorily authorized. The constable did not blunder. (*People v. Defore* (1926) 242 N.Y. 13, 21 [150 N.E. 585, 587]; *People v. Cahan* (1955) 44 Cal.2d 434, 443 [282 P.2d 905, 50 A.L.R.2d 513].)

The judgment (order denying suppression) is affirmed.

Coffee, J., and Perren, J., concurred.