**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Wilbert WILLIAMS, Defendant-Appellant.**

**No. 16110.**

United States Court of Appeals Sixth Circuit.

July 19, 1965.

Rehearing Denied Nov. 11, 1965.

William H. Van Duzer (Court-appointed), Lansing, Mich., for appellant.

Joel M. Shere, Asst. U. S. Atty., Detroit, Mich. (Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before MILLER and O'SULLIVAN, Circuit Judges, and PECK, District Judge.

JOHN W. PECK, Judge.

The first question raised on this appeal from defendant-appellant's conviction is concerned with the language appearing in a search warrant procured before arresting officers entered the premises in question. An examination of that warrant shows it to have been based on information received by the agent that appellant "kept a ready supply of heroin on hand in the [his] apartment." Appellant argues that the use of the past tense verb "kept" does not indicate a presently continuing circumstance and that an ambiguity existed under which it might not be clear that the affiant knew of heroin being in possession at the time of the issuance of the warrant. Appellant argues that under People of Michigan v. Wright, 367 Mich. 611, 116 N.W. 2d 786 (1962) the warrant was not properly issued. That case holds a warrant improperly issued which was based on an affidavit relating facts as they existed six days prior to its issuance.[1] However, to state that the warrant is invalid because of an ambiguity begs the question of ambiguity. We find none and agree with the conclusion of the trial judge who stated that the inclusion of the word "ready" caused the allegation to be one of "continuing possession." It is therefore here determined that the search warrant was not improperly issued.

A review of the facts is a necessary prelude to a consideration of the two remaining questions presented by this appeal. The record discloses that on the day of the search and arrest in question, four agents of the Federal Bureau of Narcotics, having in their possession the search warrant hereinabove discussed, and two members of the Detroit Police Department went to the apartment of the defendant described in the warrant. On arrival, they found the door to the apartment standing open, and one of the agents saw appellant sitting on a couch talking on the telephone. The officers then approached the apartment and observed that appellant made no acknowledgment of their presence until three of them had crossed the threshold, when they heard appellant say, "I will have to

---

1. In the present case, the warrant was issued one day prior to the search and arrest, but the difference in the time interval is immaterial to the result here reached.

call you back. The police are here." At the moment he put down the phone, the officers stepped into the apartment, identified themselves to him, informed appellant that they had received a warrant to search the apartment, and showed it to him. An agent testified, "Even before we could finish our complete statement, he says, 'No, that is alright,' he says, 'I know who you are, go ahead and look around and do whatever you have to.' "

The record indicates that the agents then proceeded to search the apartment, finding paraphernalia used in the adulteration and preparation of heroin in the kitchen. However, the search was otherwise negative. An agent "padded [appellant] down and searched his pockets for weapons," as a customary part of a narcotics search, "for self-protection." The agent testified that he then asked appellant to enter the bathroom (two women who had been with defendant when the police arrived still being present), and that upon being asked to undress, appellant said, " 'Well, you don't have to do that.' and he reached back and he says, 'Here it is.' " Appellant thereupon handed one of the agents a wax paper envelope containing a white powder which analysis established to be heroin.

■ Both parties agree that the next question presented by this record may be stated as follows: "Was the narcotics agents' entry into the apartment though an open door without invitation and without announcing their purpose sufficient to support a valid search?" In contending for a negative response to that question, appellant argues the applicability of Miller v. United States, 357

U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) and Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). However, in Miller the officers had neither an arrest nor a search warrant and physically broke open a chained door and in Ker they used a key obtained from the manager of the building. Thus both cases are clearly distinguishable from the present situation, in which the record establishes that the officers entered through a door which on arrival they found to be "as far open as it could be." Ker further establishes that in the absence of controlling federal standards the lawfulness of a search is to be determined by the law of the state, but no Michigan statute or case is of assistance on this point.[2] In such circumstances, the issue is whether the agents' entry into the apartment without prior announcement of authority and purpose violated the Fourth Amendment of the Constitution, which prohibits unreasonable searches and seizures. (Ker v. California (supra)). "Reasonableness" is to be determined in the light of the "total atmosphere of the case." (Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950)). So viewed, it is here concluded that the constitutional requirement of "reasonableness" was not violated and that the agents' entry through an open door without invitation and announcement of purpose was sufficient to support a valid search.[3]

■ The final question is whether probable cause to support an arrest without a warrant was provided by the dis-

2. Mich.St.Ann.1954, § 28.880, Comp.Laws 1948, § 764.21, makes it permissible for a peace officer with a warrant to "break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be if, after he has announced his purpose, he is refused admittance." This statute has not been construed by the courts.

3. Keiningham v. United States, 109 U.S. App.D.C. 272, 287 F.2d 126 (1960) held

under a unique factual pattern that where officers with a search warrant for the first premises entered, but without one for the second, entered the latter after opening an unlocked door, the subsequent search was invalid because the entry was improper. The Court concluded that the word "break" as used in 18 U.S.C. § 3109 means to "enter without permission." The case stands as an isolated example of its conclusion.

**478**

covery of the paraphernalia used in adulterating heroin, considered by the officers in the light of the information contained in the affidavit previously supplied them. However, Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) are dispositive of this issue. See also Hopper v. United States, 267 F.2d 904 (9th Cir. 1959). In the present situation, where the officers had information obtained from a previously reliable informant to the effect that appellant kept a ready supply of heroin in his apartment, and upon arrival there found adulteration paraphernalia, reasonable grounds for the arrest which occurred at the time they asked appellant to accompany them into the bathroom existed.

Affirmed.