**STATE of Delaware**

**v.**

**Richard SPISAK.**

Superior Court of Delaware,
New Castle.

Sept. 9, 1974.

Joseph Hurley, Deputy Atty. Gen., Wilmington, for the State of Delaware.

William C. Bradley, Jr., Kimmel, Spiller & Bradley, Paul H. Spiller, Wilmington, for defendant.

STIFTEL, President Judge.

This is another marijuana search and seizure case. Defendant Richard Spisak asks this Court to suppress the evidence obtained by the police from his Alban Park apartment because, he claims, they entered illegally and seized contraband without a warrant of any kind.

The major facts follow:

Trooper Carl Kent, working undercover, agreed to buy from John Tait at his Continental Arms apartment several pounds of marijuana. It was arranged that John Bachmeyer, Tait's friend, was to get the marijuana. Bachmeyer left the Trooper and Tait on October 17, 1973, and went to pick up his girlfriend, Ms. Cardin, at a Delaware Avenue address, followed by Detective Collison. Several police cars were involved. However, they lost Bachmeyer's yellow Volkswagen after he entered the Alban Park development. Wandering around, Collison saw the Volkswagen parked near Homestead Drive. The officers did not know which apartment Bachmeyer and his lady friend entered. However, in a relatively short time, they saw the two emerge from 622 Homestead Drive carrying a large cardboard carton. Collison followed Bachmeyer and his girlfriend and arrested them for possession with intent to distribute several miles from Homestead Drive. A cardboard box and its contents was seized at the time. It contained a substantial quantity of marijuana.

Immediately after this episode, Collison and other officers returned to 622 Homestead Drive, intending to secure the apartment and occupants until they could get a search warrant to search the apartment.

They entered the duplex apartment building and banged on the door entrance to the downstairs apartment but received no answer. They ran upstairs to the second floor apartment and knocked on the door there. A man came to the door—perplexed. The police were not dressed like police but were dressed, in many respects, like the drug-cult people they ofttimes tried to arrest. The man was ready to get a gun to prevent their entrance. He was interested in preventing them from disturbing his gravid wife. After short discourse, the police came to the realization that they were in the wrong apartment and went down to the ground floor and knocked on the door of the first floor apartment again. This time, they heard a male voice from inside the apartment asking who was there. One of the officers hollered: "John Bachmeyer" (who had just been arrested). Spisak, who had been taking a shower, was apparently on his way to the door when it was forced open by the police. After the police entered the first floor apartment, they invited Spisak, the occupant, to get dressed so that he might be more comfortable. Collison followed Spisak to his bedroom to make sure he did not get a weapon that he could use. In the bedroom, Collison noticed a square box on the floor that was like the box that been obtained a few minutes before when John Bachmeyer was arrested. Collison opened the top of the box and peered in. Sure enough, the contents appeared to be similar to the contents of the box taken into custody upon the arrest of Bachmeyer—marijuana. Spisak was then arrested on the charge of possesssion with intent to deliver.

■ The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It applies to States through the Fourteenth Amendment. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, 736; Ponce, Appellant v. Craven, 9 Cir., 409 F. 2d 621, 624.

▆ To be valid under the Fourth Amendment, a warrantless search must fall within one of the exceptions. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564. Exigent circumstances is one of the exceptions. United States v. Frick, 5 Cir., 490 F.2d 666, 669. It is on this exception that the State relies to justify the entrance into the living quarters of the defendant without any warrant, arrest or search. The burden is the State's to show its course of action was not unreasonable under the circumstances. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, 693; United States v. Davis, 3 Cir., 461 F.2d 1026, 1030.

Has the State established exigent circumstances to justify the police action?

The police plan failed. They were to follow the Bachmeyer Volkswagen. They lost it. In all probability, they were to follow Bachmeyer to the supplier's residence. Supposedly, the arrest of Bachmeyer and his alleged supplier would have taken place simultaneously. The plan, however, went awry, and instead, Bachmeyer was arrested several miles from Alban Park. The police backtracked to the Alban Park address because they were concerned that Bachmeyer's absence would soon be noted or that, in custody, he would notify someone of his predicament because he was entitled to one phone call immediately by Police Department regulations. The police speculated that they would not have time to proceed by warrant. The real problem was that the police could not have obtained a search warrant since they knew neither the exact apartment nor the name of its occupant.

▆ The restrictions on the Fourth Amendment vary. The Amendment has strict requirements for the search of a house. This is somewhat relaxed, however, by practicalities. When dealing with narcotics, speed is essential. Kaplan, "Search and Seizure," 49 Calif.L.Rev. 474, 480. Police must be able to move as quickly as possible since evidence can rapidly disappear. United States v. Davis, 3 Cir., 461 F.2d 1026, 1032. But every case involving narcotics does not excuse the requirement of a search warrant. Such a rationale could soon eliminate the constitutional scrutiny. Vale v. Louisiana, 399 U. S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409, 413.

▆ The emergency was police created. State v. Peele, 10 Wash.App. 58, 516 P.2d 788, 792. They did not want to delay the arrest of Bachmeyer because they had promised to pay him $3,000 for the contraband. They were afraid if they turned this money over to Bachmeyer and used him for a second purchase, they might never see the original $3,000 again. This could not be risked. So they made their move against defendant when they did. The defendant's apartment was never under surveillance. They did not know which apartment the alleged distributor occupied. By deductive process, police speculated it was the first floor because the people on the second floor did not look like drug dealers. If there had been three or four apartments instead of two, would entrance into each without a warrant be justified until the person that looked like a drug dealer was identified? Such a procedure cannot receive judicial approbation. United States v. Rubin, 3 Cir., 474 F.2d 262, does not allow this procedure. There the emergent circumstances were apparent and the home of the brother had been under surveillance and he was known to the police. See Chapman v. United States, 365 U.S. 610, 616, 81 S.Ct. 776, 779, 5 L.Ed.2d 828.

The State does not argue that it had probable cause to enter defendant's apartment to arrest him. Cf. Ker v. California, supra, 374 U.S. at 43, 83 S.Ct. at 1635, 10 L.Ed.2d at 744. Arrest and incidental

search was never their intention. Cf. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 370, 92 L.Ed. 436. Anno: "Search Incident to Arrest", 23 L.Ed.2d 966, et seq. The police contemplated securing the apartment and its occupant until they could obtain a warrant to search. Such a procedure is uncommon, but not without precedence. People v. Boorem, 519 P.2d 939, 940 (Colo.1974).

The police forced the door, which they found to be locked, even though defendant thought it was unlocked. The ruse that Detective Collison used in identifying himself as Bachmeyer did not succeed in getting them into the apartment. They pushed their way in through a locked door. Prior to their entry, they did not comply with the knock and announce rule required in Delaware. They did not identify themselves as police and state their purpose but used Bachmeyer's name. Marvel v. State, Del., 290 A.2d 641; Dyton v. State, Del., 250 A.2d 383.

 The knock and announce rule may be obviated by police when to use it may be unsafe. If a ruse prevents injury, it may be justified. Dickey v. United States, 2 Cir., 332 F.2d 773 (1964). The State, however, in this case did not show justification for its failure to comply with the knock and announce rule. This was its burden.

There was no foundation to support a good faith belief on the part of the police that compliance with the normal knock and announce rule would have increased their peril or led to fast and surreptitious destruction of the drugs. People v. Bradley, 81 Cal.Rptr. 457, 460 P.2d 129, 134. Cf. Tatman v. State, Del.Supr., 320 A.2d 750, 751.

 Once inside, even though the police intended to get a search warrant, an officer accompanied defendant to the place where he would dress. This was proper. The police had a right to protect themselves against any surprise. While defend-

ant was dressing, the policeman saw in open view a cardboard carton that looked similar to the one Bachmeyer had earlier. However, a cardboard box in and of itself gave no indication of drugs. A detective opened the top of the box and looked into the box before he was able to determine that contraband was inside. He could not see the contents without opening it. The State did not show that this search of the box was justified without an arrest or without a search warrant. The drugs were not in plain view.

The totality of circumstances indicates that the procedures used by the police amounted to an unreasonable search and seizure under the Fourteenth Amendment of the United States Constitution.

Defendant's motion to suppress granted.

So ordered.