[No. B167727. Second Dist., Div. Three. Mar. 30, 2004.]

In re ELVIS PONCE DE LEON on Habeas Corpus.

**COUNSEL**

Janice Fukai, Alternate Public Defender, Gerald P. Williams and Jenny Elisabeth Wayland, Deputy Alternate Public Defenders, for Petitioner Elvis Ponce De Leon.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and Thien Huong Tran, Deputy Attorneys General, for Respondent State of California.

**OPINION**

**KLEIN, P. J.**—A jury convicted Elvis Ponce De Leon of assault on a peace officer and possession of a controlled substance. (Pen. Code, § 245, subd. (c); Health & Saf. Code, § 11350, subd. (a).) In subsequent writ proceedings, the trial court set aside the conviction of possession of a controlled substance when it came to light during the Rampart investigation that the arresting officers may have used excessive force in this case. The trial court declined to set aside the conviction of assault on a peace officer. For the reasons stated below, we conclude the assault conviction also must be reversed. Accordingly, we grant the relief requested and remand the case for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The trial.*

Ponce De Leon was charged with two counts of robbery of Tito Mena, attempted robbery of Otillo Fuentes, assault with a firearm on John Lidyoff, assault on Los Angeles Police Officer Melvin Boyd, possession of a controlled substance and possession of a firearm by a felon.

#### a. *Prosecution's evidence.*

On May 22, 1997, a male approached Mena at a phone booth, simulated a weapon in his pocket and demanded Mena's property. At the preliminary hearing, Mena testified he gave the assailant $3. At trial, Mena testified he told the assailant he had nothing.[1]

On May 24, 1997, at approximately 9:00 p.m., a male approached Mena and Otillo Fuentes outside Mena's home near 11th Street and Union Avenue. The male struck Mena three times in the head with a handgun and fired the handgun as he left the scene. Later that night, Mena identified Ponce De Leon in a field show-up as the individual who attacked him, but testified at trial he had done so only because a police officer told Mena that Ponce De Leon was the assailant. At the preliminary hearing, Mena testified he gave the male approximately $80 and identified Ponce De Leon as the male who robbed him on May 22 and 24, 1997. However, at trial, Mena could not recall whether he had given the assailant any money and could not recall if the male who accosted him on May 22, 1997, was the same individual who struck him with a handgun on May 24, 1997.

Shortly after Mena was attacked on May 24, 1997, John Lidyoff saw a male run across 11th Street. The male produced a handgun and fired it at Lidyoff's car. Lidyoff identified Ponce De Leon in a photographic lineup on May 27, 1999, and at trial but admitted he could not have identified Ponce De Leon at trial had he not seen the photographic lineup.

Los Angeles Police Officers Melvin Boyd and Michael Valencia heard a gunshot as they traveled west on 11th Street on motorcycles. Shortly thereafter, they saw Ponce De Leon running on 11th Street. A number of individuals on the street pointed at Ponce De Leon and said he had a gun. Ponce De Leon ran to a parked car, crouched behind it on the passenger side, then entered the vehicle and started it. Boyd dismounted the police motorcycle, stood in the middle of the street,

---

[1] At the time of trial, Mena was serving a prison term for assault with a firearm and possession for sale of cocaine base.

drew his firearm and ordered Ponce De Leon to stop the car. As Ponce De Leon accelerated the vehicle toward Boyd, Boyd fired three shots, striking the vehicle in the driver's door. Boyd had to jump from the path of the oncoming vehicle and could have touched the vehicle as it passed. Officer Valencia followed the vehicle east on 11th Street and saw Ponce De Leon jump from the moving vehicle before it crashed into a small market. Ponce De Leon ran from the scene.

Los Angeles Police Officers Doyle Stepp and Omar Veloz responded to radio broadcasts and saw Ponce De Leon running north on Albany Street. Stepp exited the patrol vehicle and went to the sidewalk. Ponce De Leon slowed to a fast walk until he got approximately seven yards from Stepp. Ponce De Leon then charged Stepp, struck Stepp on the right side of the head and attempted to flee. Stepp and Veloz, assisted by two other officers, took Ponce De Leon into custody. Veloz found 1.24 grams of rock cocaine in Ponce De Leon's pocket.

A handgun containing five live rounds and one casing was found near the scene of Ponce De Leon's arrest.

b. *Defense evidence.*

Ponce De Leon testified in his own defense. Ponce De Leon claimed he had been returning to his vehicle after playing soccer on May 24, 1997, when an unknown male confronted him. The male demanded the beer Ponce De Leon was carrying and a shoving match ensued. The male walked to where a group of people was sitting on a car and crouched near the tire of the car as if to get something. Ponce De Leon heard footsteps, turned and saw the male now had a handgun. Ponce De Leon threw the beer at the male and heard a gunshot as he ran.

When Ponce De Leon started to drive from the scene, he saw "a figure of a man pointing a gun" at him. Ponce De Leon did not realize the individual was a police officer and attempted to drive past the person. Ponce De Leon ran after his car stalled in order to escape the individual he believed had been trying to harm him. Ponce De Leon attempted to report what had happened to Officers Stepp and Veloz but they arrested him. Ponce De Leon claimed Stepp and Veloz beat him when he said he knew nothing about a gun. Ponce De Leon denied he had possessed a handgun or drugs but admitted he previously had been convicted of two counts of robbery in 1989 when he was 16 years of age.

2. *Verdicts and sentencing.*

The jury convicted Ponce De Leon of assault on Officer Boyd and possession of a controlled substance and found Ponce De Leon had two prior convictions of robbery. The jury acquitted Ponce De Leon of attempted robbery of Fuentes. The

jury could not reach a verdict as to the remaining counts of robbery of Mena, assault with a firearm on Lidyoff or possession of a firearm by a felon.

The trial court denied Ponce De Leon's request to strike the prior convictions in the interest of justice and imposed a sentence of 25 years to life in state prison for assault on a peace officer and a similar concurrent term for possession of a controlled substance.

### 3. *Subsequent proceedings.*

Ponce De Leon filed a petition for writ of habeas corpus in the superior court, which alleged Ponce De Leon's conviction had been the product of misconduct by Rampart Division police officers. Ponce De Leon's petition relied on the testimony of former Los Angeles Police Officer Rafael Perez who averred he saw Stepp choke Ponce De Leon to unconsciousness when Stepp booked Ponce De Leon into custody in this case. Stepp told Perez that Ponce De Leon had been beaten on the way to the station because Ponce De Leon tried to kill a police officer. Ponce De Leon's writ petition asked the superior court to reverse the conviction on both counts because Stepp and Veloz may have planted evidence of cocaine to cover up their excessive use of force.

After the superior court issued an order to show cause, the People conceded the conviction of possession of a controlled substance had to be reversed because it depended on the testimony of Officers Stepp and Veloz. Based on this concession, the trial court granted Ponce De Leon's petition as to the conviction of possession of a controlled substance but denied the petition as to the conviction of assault on a peace officer.

### CONTENTIONS

Ponce De Leon contends "spillover prejudice" from a joint trial of the possession of cocaine charge and the assault on a peace officer charge requires reversal of the conviction of assault on a peace officer. Ponce De Leon also contends the prosecution's failure to disclose evidence of official misconduct by one of the police officers involved in this case in October and December of 1998 violated *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194].

### DISCUSSION

### 1. *"Spillover prejudice" analysis does not apply to this case.*

Ponce De Leon contends evidence related to the dismissed charge of possession of cocaine caused "spillover prejudice" that prevented a fair trial on the charge of assault on a peace officer. (*U. S. v. Rooney* (2d Cir. 1994) 37 F.3d 847, 855–856.)

Spillover prejudice, sometimes referred to as "retroactive misjoinder," arises when the "joinder of multiple counts was proper initially, but later developments—such as . . . an appellate court's reversal of less than all convictions—render the initial joinder improper." (*U. S. v. Jones* (2d Cir. 1994) 16 F.3d 487, 493; *U. S. v. Vebeliunas* (2d Cir. 1996) 76 F.3d 1283, 1293–1294; *U. S. v. Aldrich* (8th Cir. 1999) 169 F.3d 526, 528.)

The People claim the federal cases cited by Ponce De Leon are not controlling authority. (*People v. Williams* (1997) 16 Cal.4th 153, 190 [66 Cal.Rptr.2d 123, 940 P.2d 710].) They urge this court to engage in harmless error analysis to determine whether a more favorable result is reasonably probable absent any error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Although decisions of lower federal courts are not binding on state courts, they are entitled to great weight. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 79 [32 Cal.Rptr.2d 33, 876 P.2d 519]; *People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) Thus, when it is useful to our analysis, we generally will consider the result under federal law. However, the theory of spillover prejudice has no application here because there was no misjoinder of counts, retroactive or prospective.

Ponce De Leon's application of the spillover prejudice rule depends on his assertion that evidence related to the circumstances of his arrest, including his alleged possession of cocaine, should not have been admitted at trial and would not be admitted at any retrial. This premise is flawed. The circumstances of Ponce De Leon's arrest would have been admissible at trial even if Ponce De Leon had not been charged with possession of cocaine. Stepp and Veloz testified they apprehended Ponce De Leon after a foot pursuit. Thus, their testimony was relevant to the issue of identity.

Additionally, without prejudging the merits of an evidentiary issue that has not yet been presented to a trial court, if the jury found Ponce De Leon possessed cocaine, this finding would be relevant to show motive and intent with respect to the assault on a peace officer charge. (*People v. Tapia* (1994) 25 Cal.App.4th 984, 1020 [30 Cal.Rptr.2d 851].) Because it thus appears that evidence related to Ponce De Leon's alleged possession of cocaine might properly be admitted at trial of the assault on a peace officer charge even absent a possession of cocaine charge, Ponce De Leon cannot show prejudice from the joinder of the counts. Thus, the federal authority cited by Ponce De Leon misses the mark.

The issue, we believe, is not one of misjoinder, but of due process. For the reasons that follow, we conclude reversal is required on that basis.

### 2. *Under the circumstances presented, due process requires retrial of the assault on a peace officer count.*

Ponce De Leon contends the testimony of Stepp and Veloz suggested Ponce De Leon was a violent drug addict bent on assaulting police officers. This evidence undermined his credibility because Stepp and Veloz described conduct that was similar to the assault on Officer Boyd. Their testimony also offered a false explanation as to why Ponce De Leon would act erratically, thereby bolstering the People's case. The prosecutor used this evidence to advantage in argument.[2] Ponce De Leon asserts that, had the jury been aware Ponce De Leon was truthful in his claim Stepp and Veloz beat him, it might have believed Ponce De Leon's testimony he did not realize Boyd was a police officer. Ponce De Leon concludes that, because the trial was a credibility contest between Ponce De Leon and the police officers, and the jury's verdicts reflect it believed Stepp and Veloz, who now have been discredited, he must be retried on the assault charge.

We agree. The issue at trial was Ponce De Leon's credibility vis-à-vis the police officers'. Ponce De Leon put his credibility directly in issue by testifying. The prosecutor impeached Ponce De Leon with two prior robbery convictions and cross-examined Ponce De Leon regarding his assertion Stepp and Veloz beat him. The prosecutor also cast doubt on Ponce De Leon's version of the event by pointing to his possession of cocaine and his assaultive behavior.

Ponce De Leon, on the other hand, was denied the opportunity to corroborate his testimony that Stepp and Veloz used excessive force in the arrest, an extremely significant point. Indeed, based on this showing, the People conceded in the trial court that Ponce De Leon was entitled to retrial on the possession of cocaine charge. We believe the credibility of the officers was intertwined as to the two counts. Had Ponce De Leon been able to cast doubt on the testimony of Stepp and Veloz and corroborated his own testimony, it is reasonably probable the jury would have given Ponce De Leon's testimony greater weight and reached a different result on the assault count. Accordingly, the conviction of assault on a peace officer must be reversed.

---

[2] The prosecutor argued the case was about "Mr. Ponce de Leon being afraid on May 24th, 1997, of being caught, of doing whatever he could to get away, or trying to run over a cop . . . . It's about Mr. Ponce de Leon being afraid of being convicted so he testifies and lies . . . . It's about Mr. Ponce de Leon taking the theory that the best defense is a good offense. So what does he do? He attacks the cops. He attacks the cops in order to distract you from the truth. . . . Along with being a robber, Mr. Ponce de Leon assaulted a police officer, was in possession of cocaine, is a felon with a firearm, and he's also a con man. He is trying to con you into a story."

### 3. *Conclusion.*

█ For the foregoing reasons, Ponce De Leon must be retried on the assault charge. Obviously, the People also may retry any of the other offenses charged except the attempted robbery in count III as to which Ponce De Leon was acquitted.

Based on this resolution, we need not address Ponce De Leon's further assertion the prosecution's failure to provide discovery requires reversal under *Brady*.

## DISPOSITION

The order to show cause is discharged. The petition for writ of habeas corpus is granted. The matter is remanded to the superior court for further proceedings.

Croskey, J., and Kitching, J., concurred.

On April 21, 2004, and May 13, 2004, the opinion was modified to read as printed above.