Filed 4/13/15  Miranda v. Super. Ct. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRANK PAUL MIRANDA, | |
| Petitioner, | |
| v. | G050870 |
| THE APPELLATE DIVISION OF THE SUPERIOR COURT OF ORANGE COUNTY | (Super. Ct. No. 30-2014-00746722) |
| Respondent; | O P I N I O N |
| THE PEOPLE, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Appellate Division of the Orange County Superior Court, Deborah C. Servino, Glenn R. Salter, and Richard Y. Lee, Judges.  Petition granted.

Chad R. Maddox for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney and John R. Maxfield, Deputy District Attorney, for Real Party in Interest.

*        *        *

THE COURT:[*]

Petitioner, Frank Paul Miranda, filed a motion to dismiss a misdemeanor complaint on the basis that he was denied his state and federal constitutional right to a speedy trial. When the trial court denied his motion, Miranda sought relief by filing a petition for writ of mandate in the Appellate Division of the Orange County Superior Court. When his writ petition was denied by the Appellate Division, Miranda sought relief in this court. The petition has merit and relief is granted.

PROCEDURAL HISTORY

At the motion, the parties agreed on the following facts: On December 11, 2012, Frank Paul Miranda was arrested for driving under the influence. At the time of his arrest, Miranda gave the officer his correct address where he has resided throughout this case. Miranda was released on bail with a court appearance scheduled for January 8, 2013. On January 8, Miranda appeared in court, but was told at the clerk's window that nothing had been filed. On the same day, Miranda checked-in at the Orange County District Attorney's Office and he was given an information sheet indicating nothing had been filed.

On May 6, 2013, a misdemeanor complaint was filed alleging two counts of driving under the influence based on Miranda's arrest on December 11, 2012. An "Arraignment Letter" was sent to Miranda's address advising him that his arraignment was scheduled for June 3, 2013. When Miranda failed to appear on June 3, an arrest warrant was issued by the trial court on June 13, 2013.

---

[*] Before O'Leary, P. J., Rylaarsdam J., and Ikola, J.

2

On April 18, 2014, the trial court recalled the bench warrant and Miranda was arraigned on the misdemeanor complaint. Because over 16 months had passed from his arrest to his arraignment on the complaint, he filed a speedy trial motion pursuant to both the California and U.S. Constitutions.

At the hearing on the motion, the People acknowledged there was no proof of service for the arraignment letter, and the Sheriff's Department did not serve the warrant after the warrant issued. The People also acknowledged that Miranda was unaware the driving under the influence case had been filed and the case was pending until he applied for an independent contractor job on March 21, 2014, and he was told his proposal could not be considered because of his unresolved court case from his arrest in 2012.

At the conclusion of the motion, the trial court announced its tentative opinion and said, "I'm finding that the time for the speedy trial motion starts to run in this case on the date of the arrest; and I'm finding that on the day of the arrest he was – the defendant gave the right address and that he appeared as the citation required him to appear; and that there was no filing and no complaint; and that he did, in fact, check with the district attorney's office and found out that there had, in fact, not been any filing."

The trial court continued and said, "And I'm using the state's standard, not the federal standard, for – so – but the over-the-year delay does cause, I think, a burden to be placed on the People. And implying those – and in using the factors that you folks are referring to, even though there's no proof of actual service of the warrant or the delivery of the mail, the fact is that the prosecution has a backup system, which is that notice goes out to the governmental agencies, which apparently is the way he finds out that there is a complaint out there – is sufficient for the Court to find that the defense, or the accused, has a burden to show actual prejudice. [¶] And looking at the declarations, I don't see the actual prejudice . . . ."

3

In response to the trial court's explanation that it was using the state standard, counsel said, "I understand the Court said that it's using the state's standard, but we're specifically making the motion alleging a violation of the federal speedy trial right." When counsel said, "I don't know how we get to using the state standard," the following exchange took place: "[The Court]: Because you're in California. You've heard of Calhoun, haven't you? Well, this is a political thought. Remember a gentleman – a philosopher named Calhoun? [¶] [Counsel]: No. [¶] [The Court]: Oh, my gosh. Okay. So he's a – before the Civil War – big proponent of state rights; okay? So that's a continuing dialogue that's going on. [¶] But for the purpose of my ruling here, I'm expressly not applying the federal rule. I'm applying the state rule, which is not that far away from yours in view of the Court's finding. A – I'm using the date of the arrest, which is beneficial to the accused. From the date of the arrest to the time he's actually arraigned is over a year; and I'm finding on behalf of the accused that, what, the process that's in place by the district attorney on straightforward misdemeanors, DUI, is somewhat de minimis in that they can't show actual service of the warrant that was issued or that they actually served a letter to him. [¶] . . . The only way we get to him is they have a system of notifying the governmental agencies, and that's why he doesn't get his job. He finds out what's going on. [¶] So there's a time lapse between the time of the arrest and the time he's arraigned. And so those are the factors the Court's considering; that when you fill in those four or five factors that come – that the Court's balanced that. The State had some responsibility to show due diligence, and I'm finding that they did. [¶] . . . [¶] . . . They barely had enough. So then I go to you, after I tell you that, and tell you, you need to show some actual prejudice in addition to the delay in time."

When the trial court denied the motion, Miranda unsuccessfully sought relief in the Appellate Division of the Orange County Superior Court. After this court issued an order to show cause, the People filed a return and Miranda filed a traverse.

4

DISCUSSION

Miranda filed a motion to dismiss the misdemeanor complaint in this case on the basis that he had been denied his state and federal right to a speedy trial. Although Miranda's speedy trial motion clearly states the motion is based on both the state and U.S. constitutions, the trial court's decision to "expressly not apply[ ] the federal rule," is problematic because there are significant differences between the state and Sixth Amendment right to a speedy trial, (*Scherling v. Superior Court* (1978) 22 Cal.3d 493, 504; *People v. Martinez* (2000) 22 Cal.4th 750, 754) and "we are bound by decisions of the United States Supreme Court interpreting the federal Constitution" (*People v. Bradley* (1969) 1 Cal.3d 80, 86.)

Under the state standard, the defendant has the initial burden to affirmatively demonstrate prejudice as a result of the delay. (*People v. Lowe* (2007) 40 Cal.4th 937, 942.) In contrast, the federal standard, as explained in *Barker v Wingo* (1972) 407 U.S. 514, 529 (*Barker*), employs a more amorphous test, in which prejudice is but one of four factors, none of which "is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.'" (*People v. Williams* (2013) 58 Cal.4th 197, 233.) "'Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay . . . .'" (*Id.* at p. 234, citing *Barker*, *supra*, 407 U.S. at pp. 530-531.)

Once a defendant triggers the federal speedy trial analysis, "some of the factors" courts should assess in determining whether he or she has been deprived of speedy trial rights include "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (*Barker v Wingo*, *supra*, 407 U.S.

5

at p. 530.) *Barker* explains, "The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed." (*Ibid*.) "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." (*Id*. at pp. 530-531.)

Rather than weighing the *Barker* factors, as the federal standard requires, the trial court in this case mistakenly concluded that Miranda needed to "show some actual prejudice in addition to the delay in time." The trial court's refusal to apply the correct legal standard to Miranda's federal speedy trial claim represents an error of law and therefore the appellate division abused its discretion when it denied Miranda's petition for writ of mandate to compel the trial court to conduct a hearing at which the court considers the *Barker* factors. (See also *Serna v. Superior Court* (1985) 40 Cal.3d 239, 264.)

Initially, this court issued an order to show cause (OSC) and set a schedule for briefing and oral argument. After reviewing the parties' briefs and the record below, we conclude that Miranda's entitlement to a new hearing under both the state and federal speedy trial standards is "so obvious that no purpose could reasonably be served by plenary consideration of the issue . . . ." (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1241.) Having received full briefing on the subject, we discharge the OSC as having been improvidently granted, and grant the petition for writ of mandate in the first instance, without the necessity of oral argument. Because of the societal interests in a speedy trial, there also ""'is an unusual urgency requiring acceleration of the normal process . . . ." [Citation.]'" (*Ibid.*; see also *Countrywide Home Loans, Inc. v. Superior Court* (1997) 54 Cal.App.4th 828.)

## DISPOSITION

The OSC is discharged as improvidently granted. Let a peremptory writ of mandate in the first instance issue directing the Appellate Division of the Orange County Superior Court to vacate its order denying the petition for writ of mandate. The Appellate Division is directed to grant the petition for writ of mandate and compel the trial court to vacate its order denying petitioner's speedy trial motion and conduct a new hearing at which the trial court follows *Barker*, *supra*, 407 U.S. 514, in considering petitioner's speedy trial motion based on the Sixth Amendment.

This decision shall be final as to this court 15 days after its filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).)